UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                   :

SUBHAN KHAN,                    :      08 Civ. 7093 (RJH)
                                   :

               Plaintiff,      :

                                   :      **MEMORANDUM**
      - against -             :      **OPINION AND ORDER**

                                   :

DOUGLAS MACHINE & TOOL COMPANY,  :
INC. and TURBOCOMBUSTOR        :
TECHNOLOGY, INC.                :
                  Defendants.    :

                                   :
-------------------------------------------------------------x

      In this diversity action, plaintiff, Subhan Khan ("Khan"), sues defendants Douglas Machine & Tool Company, Inc., a Delaware corporation ("Douglas-Del") and TurboCombustor Technology, Inc. ("TCT") for failure to pay certain sums due to plaintiff under a debenture. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") dismissing plaintiff's action.[1] Defendants argue that Khan is inappropriately attempting to collect on the debenture in direct violation of his contractual obligations under a Subordination Agreement (the "Subordination Agreement"), in which Khan agreed that his debenture was junior to debt

---

[1] Although defendants' memorandum of law is entitled "Defendants' Memorandum of Law in Support of Motion *to Dismiss* Action" (emphasis added) (hereinafter "Defs. Brief"), it appears that defendants were attempting to file a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). The Court bases this conclusion on the following facts: (i) defendants' Notice of Motion states that defendants are seeking an order for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; (ii) defendants have supplied accompanying declarations and affidavits setting forth facts and evidence in support of their motion; (iii) defendants have supplied a Local Civil Rule 56.1 "Statement of Undisputed Material Facts in Support of Motion for Summary Judgment;" and (iv) nowhere in their legal memoranda do defendants refer to Rule 12(b)(6). Furthering the confusion, plaintiff's opposition memorandum is entitled "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Support of Cross-Motion for Summary Judgment" (hereinafter "Pl. Brief"). However, plaintiff simultaneously filed a Response to Defendants' Statement of Undisputed Material Facts, in which it recognized that defendants' motion was one for summary judgment. Accordingly, the Court will treat defendants' motion as a motion for summary judgment pursuant to Rule 56.

held by National City Bank ("NCB") and agreed not to take any action to enforce the debenture without first obtaining NCB's written consent. Plaintiff cross-moves for summary judgment, or in the alternative, to strike the affirmative defenses asserted in defendants' answer pursuant to Rules 8(c) and 12(f) of the Federal Rules of Civil Procedure on the ground that such defenses are insufficient as a matter of law and/or do not constitute valid defenses to this action. For the reasons that follow, defendants' motion is GRANTED, and plaintiff's cross-motion is DENIED.

## BACKGROUND

The following facts are derived from the pleadings, affidavits, declarations, and attachments submitted in connection with the motions. The facts are undisputed except where indicated.

**1.     The 2005 Transaction:**

In 2005, Douglas-Del purchased two companies: Douglas Machine & Tool Company, Inc., an Ohio corporation ("Douglas-Ohio") and Douglas Machine & Manufacturing Limited Liability Company ("Douglas-KFT") (the "2005 Transaction"). (Surette Decl. ¶4-5)  In the 2005 transaction, Douglas-Del bought the stock of Douglas-Ohio and the quotas of Douglas-KFT.  (*Id.*)  At the time of the 2005 transaction, Khan was the president of Douglas-Ohio, a company owned by Khan's brother, his wife, and two other shareholders; Khan was also one of four owners of Douglas KFT.  (*See id.* ¶¶4-6; Khan Aff. ¶¶2, 4; Foster Aff. Ex. 1 ¶¶ 12-13).  After the transaction, Khan remained president of Douglas-Ohio and became a shareholder of Douglas-Del.  (Surette Decl. ¶6)

To help finance the 2005 Transaction, Khan loaned $833,333 to Douglas-Del pursuant to the terms of a 6½% Senior Convertible Debenture, which was executed on

January 1, 2006 (the "Debenture").  (Khan. Aff. ¶4)  The Debenture provided that it was

to be governed by New York law.  (Surette Decl. Ex. 1 §9(d))  Similar debentures were

entered into between Douglas-Del and other Douglas-Del shareholders.  (Khan Aff. ¶4;

Surette Decl ¶6, Ex. 1 §2)  Under the terms of the Debenture, Douglas-Del is obligated to

pay interest upon the outstanding principal at the rate of 6.5% in semi-annual installments

until December 31, 2011, at which time the entire principal and all theretofore accrued

and unpaid interest becomes payable. (Surette Decl. Ex. 1 §1; Pl. Statement of

Undisputed Facts ¶3)

      NCB, a bank in Dayton, Ohio, provided additional financing for the 2005

Transaction.  (Surette Decl. ¶8)  In connection with NCB's provision of this financing,

Khan executed the Subordination Agreement under which he agreed that his debt was

junior to NCB's debt.  (Surette Decl. ¶8, Ex. 2)  The Subordination Agreement,

apparently drafted by NCB's counsel (Khan Aff. ¶12), was executed by Khan and

Douglas-Del and delivered to NCB on January 1, 2006.  (Surette Decl. ¶8, Ex. 2.)  Other

debenture holders executed similar subordination agreements.  (Surette Decl. ¶8)  The

Subordination Agreement provided that it was to be governed by Ohio law, and that until

the senior debt had been paid in full, holders of junior debt would not "take any action of

any kind to assert, collect or enforce any Junior Debt . . . without in each case first

obtaining [NCB's] written consent." (Surette Decl. Ex. 2 at §§11, 4(c)).

**2.      The Events of 2007:**

      On or about June 7, 2007, NCB advised Douglas-Del by written notice that

Douglas-Del was in default on its loan to NCB, and that pursuant to the terms of the

various subordination agreements, no further payments were permitted to any junior

creditors.  (Defs. Statement of Undisputed Material Facts ¶8; Surette Decl. Ex. 3)  In this

notice, NCB demanded payment in full not later than June 30, 2007 on its loans to

Douglas-Del, as well as on six open leases to Douglas-Del.  (Surette Decl. Ex. 3)  Khan

received a copy of this notice. (Defs. Statement of Undisputed Material Facts ¶8)  That

same day, NCB sent Khan a separate notice advising him that Douglas-Del was in default

on its loans from NCB and that pursuant to the terms of the Subordination Agreement,

Khan, as junior creditor, could not accept any further accrued interest payments from

Douglas-Del.  (Defs. Statement of Undisputed Material Facts ¶9; Surette Decl. Ex. 4)

     After receiving the notice of default from NCB, Khan sent his own notice of

default to Douglas-Del.  (Defs. Statements of Undisputed Material Facts ¶10; Surette

Decl. Ex. 5)  In this notice, dated June 18, 2007, Khan stated he was "notifying [Douglas-

Del] that it is in default [for failure to pay interest that was due on July 1, 2006 and

December 31, 2006] and that [he was], under paragraph 6(a) of the Debenture,

accelerating payment and declaring the entire principal and all accrued and unpaid

interest immediately due and payable." (Surette Decl. Ex. 5)  Khan has not been paid any

sums on his Debenture since then—in fact, he has never been paid any sums on his

Debenture.  (*See* Pl. Statement of Undisputed Material Facts ¶4; Defs. Local Rule 56.1

Counterstatement ¶4)

     On July 11, 2007, stockholders of Douglas-Del held an emergency meeting to

discuss the current status of NCB's demand for payment, the possibility of new financing

from LaSalle Business Credit, LLC ("LaSalle") or other alternative sources, a possible

merger of Douglas-Del into TCT,[2] conversion of the 6½ % convertible notes, and

---

[2] TCT is a Florida company engaged in sheet-metal fabrication for turbine engines in the aerospace and other industries, and a defendant in this action as a result of Douglas-Del's merger into TCT in August

subordination to LaSalle or other financing sources.  (*See* Khan Aff. Ex. F)  During the

meeting, the chair "indicated that Lasalle as a condition to making the loan and paying

off NCB would require all stockholders to subordinate all payments from [Douglas-Del]

to them," and that Khan "indicated that he was unwilling to do so." (Lauer Aff. Ex.)

The plaintiff and the defendants' accounts diverge with respect to the events that

unfolded after Khan indicated at the July 2007 stockholders' meeting that he was

unwilling to subordinate his Debenture to LaSalle.  Defendants contend that because

Khan refused to provide a new subordination agreement to LaSalle, the transaction was

restructured.  (*See* Defs. Reply Brief in Support of Motion for Summary Judgment and in

Opposition to Pl. Cross-Motion (hereinafter "Defs. Reply") at 6)  Instead of Douglas-Del

repaying NCB, NCB sold for value and assigned its interest in the loan to

TurboCombustor Techonology Holdings, Inc. ("TCT Holdings") on August 15, 2007, as

part of a larger transaction by which TCT Holdings purchased commercial paper and

capital assets involving Douglas-Del.  (*See* Defs. Statement of Undisputed Material Facts

¶11; Defs. Counterstatement to Pl. Statement of Undisputed Material Facts ¶17; Surette

Decl. Ex. 6)  Thereafter, on August 29, 2007, TCT Holdings and LaSalle executed an

Assignment Without Recourse, pursuant to which TCT Holdings sold for value and

assigned its interest in the loan to LaSalle.  (Defs. Statement of Undisputed Material

Facts ¶13)  Thus, defendants contend that as of August 29, 2007, NCB's interest in the

---

2007. (Surette Decl. ¶2, 14)   It is unclear from the parties' submissions what relationship, if any, Douglas-Del and TCT had prior to the August 2007 merger.  There are statements in the record that suggest that there were negotiations between Douglas-Del and TCT long prior to August 2007.  (*See, e.g.,* Khan Aff. ¶3; Pl. Response to Defs. Counterstatement of Undisputed Facts ¶25)  In addition, Khan stated in his affidavit that TCT and Douglas-Del were controlled by the same controlling shareholders in August 2007—namely, CAI Partners and Company III, L.P., CAI Capital Partners and Company III, L.P. and AeroFund IX, LLC (collectively "CAI/Aero").  (Khan Aff. ¶6)  Defendants dispute Khan's assertion that CAI/Aero were controlling shareholders of both Douglas-Del and TCT, contending that CAI/Aero were only minority shareholders of TCT and that Douglas-Del no longer has shareholders, as it no longer exists. (Defs. Local Rule 56.1 Counter-Statement ¶2)

loan from Douglas-Del was held by LaSalle.[3]  Also, on August 29, 2007, Douglas-Del

and Douglas-Ohio were merged into TCT.  (*Id.* ¶12)  Pursuant to the merger, TCT

succeeded to all of the assets and obligations of Douglas-Del, including the obligations of

Douglas-Del pursuant to the Debenture.  (Surette Decl. ¶14)   The Debenture was not

assigned to TCT, assignment being prohibited without Kahn's consent, but passed to

TCT by operation of law.  (*See* Surette Decl. ¶14, Ex. 1 §9)

      Khan does not appear to contest that the foregoing restructuring took place and

was documented as defendants claim.  However, Khan alleges that defendants engineered

the aforementioned assignments in August 2007 as part of a "scheme" that was designed

to give off the appearance that Douglas-Del's debt to NCB had not been paid and had

been validly assigned to LaSalle via TCT Holdings, thereby preserving the continued

effectiveness of the Subordination Agreement, when in fact, the debt was fully paid in

August 2007, effectively terminating the restrictions on junior debt contained therein.

(*See* Pl. Brief at 11-12; Khan Aff. ¶¶8, 15-16, 19-21)  The Court is unable from plaintiff's

submissions to discern precisely how this alleged "scheme" is claimed to have operated

as a factual matter.  The best that can be said of Kahn's affidavit—and this tracks the

arguments made in his counsel's memorandum of law—is that TCT Holdings was the

alter ego of TCT, such that when TCT Holdings purchased the Douglas-Del loan, which

became TCT's obligation as a result of the TCT-Douglas-Del merger, the debt was

extinguished as the debtor and creditor were in fact the same entity.  (*See* Khan Aff. ¶¶8,

15-16, 20-21; Pl. Brief. at 11-12)   However, facts that would support piercing the

---

[3] Subsequently, LaSalle merged into Bank of America, a fact which is uncontested.  (*See* Pl. Response to
Defs. Statement of Undisputed Material Facts ¶14)  As a consequence, defendants contend that the current
holder of the Subordination Agreement is Bank of America, as successor by merger to LaSalle.

corporate veil of TCT Holdings are conspicuously absent from plaintiff's affidavit or Local Rule 56.1 Statement.

**3.      The Present Lawsuit:**

In July 2008, Khan filed the present lawsuit in the Supreme Court of the State of New York seeking to recover money owed to him under the Debenture.  Thereafter, this action was removed to this Court pursuant to 27 U.S.C.A. § 1441(a).  After learning of Khan's lawsuit to collect on the Debenture, LaSalle, which had not consented to the lawsuit, wrote a letter to Khan stating that the filing of Khan's complaint was in breach of Khan's obligations under §4(c) of the Subordination Agreement not to take any action to assert, collect or enforce any junior debt without first obtaining [LaSalle's] written consent.  (Heinz Decl. Ex. B)  In this letter, LaSalle demanded that Khan immediately dismiss the present lawsuit and cease any other actions in breach of his obligations under the Subordination Agreement.  (*Id.*)  Khan does not dispute the fact that he did not seek LaSalle's consent before filing, but responds with various legal arguments as to why the Subordination Agreement is not, in fact, a bar to this action.  (Pl. Response to Defs. Statement of Undisputed Material Facts ¶16)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor.  *Am. Cas. Co. v.*

*Nordic Leasing, Inc*., 42 F.3d 725, 728 (2d Cir. 1994); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial."  *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322–23.  In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 256–57; *Gross v. Nat'l Broad. Co.*, 232 F.Supp.2d 58, 67 (S.D.N.Y. 2002).  Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.  *See Celotex Corp*., 477 U.S. at 324 (stating that nonmoving party need not "produce evidence in a form that would be admissible at trial" but must "by her own affidavits ... designate specific facts showing that there is a genuine issue for trial") (internal quotation marks omitted); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (stating that "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [a Rule 56] affidavit") (internal quotation marks and citation omitted).

Summary judgment concerning the proper construction of a contract may be granted where the contract conveys a "definite and precise meaning absent any ambiguity."  *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992).

Under both New York and Ohio law, which govern the interpretation of the Debenture

and the Subordination Agreement, respectively, whether contract language is ambiguous

is a question of law properly resolved on a motion for summary judgment. *See Seiden*

*Assoc.,* 959 F.2d at 428 (applying New York law); *Pavlovich v. Nat'l City Bank,* 435 F.3d

560, 565 (6th Cir. 2006) (applying Ohio law).

## DISCUSSION

Defendants contend that Khan's lawsuit to enforce the Debenture must be

dismissed as a matter of law because such lawsuit directly violates Khan's obligations

under §4(c) of the Subordination Agreement (the "no action" clause).  Section 4(c)

provides in pertinent part that:

> Until the Termination Of The Junior Debt's Future Exposure and
> thereafter until the Senior Debt has been paid in full, Junior Creditor will
> not, without in each case first obtaining [NCB's] written consent. . . take
> any action of any kind to assert, collect or enforce any Junior Debt.

(Surette Decl. Ex. 2 §4(c))  Defendants argue the Debenture was "Junior Debt," such that

Khan could not take any action to enforce the Debenture without first obtaining NCB's

consent.  Defendants further argue that NCB assigned its interest in the Subordination

Agreement to TCT Holdings, which then assigned such interest to LaSalle, which then

merged into Bank of America, such that the current holder of the Subordination

Agreement is Bank of America as successor by merger to LaSalle.  Accordingly,

Defendants argue that Khan was required to seek the consent of LaSalle and/or Bank of

America prior to bringing this lawsuit, and because he failed to do so, the lawsuit must be

dismissed.

Khan concedes that where senior debt is outstanding, §4(c) of the Subordination

Agreement requires him to seek the consent of the senior creditor prior to initiating a

lawsuit to collect on his junior debt.  He contends, however, that: (1) the Subordination

Agreement is of no force and effect because it was not validly assigned by NCB to

LaSalle (via TCT Holdings); and (2) even if the Subordination Agreement is in effect and

inures to LaSalle's benefit, §4(c) does not apply to the situation at hand because the

senior debt has actually been paid, such that there is no remaining senior debt to which

his rights are subordinate.[4]  The Court will address each of these arguments in turn.[5]

**1.      Is the Subordination Agreement Still in Force?**

Plaintiff makes several arguments that the purported assignments of the

Subordination Agreement were invalid as a matter of law, such that the Subordination

Agreement is no longer in effect.   Specifically, plaintiff argues that: (1) the terms of the

Subordination Agreement itself prohibited assignment; and (2) assignment of the

Subordination Agreement violated the terms of the Debenture.  The Court will address

each of these arguments in turn.

**a.      Did the Subordination Agreement Prohibit Assignment?**

Plaintiff contends that LaSalle is without status or authority to enforce the

Subordination Agreement because §11 thereof makes clear that only "successors in

---

[4] The Court notes at the outset that the factual record before the Court on these motions is sparse.
However, neither party sought discovery in this action—though it appears the parties were engaged in
discovery in Ohio in separate, but related legal proceedings—and nor did either party allege that the cross-
motions for summary judgment should be denied on the ground that further discovery was needed.

[5] Plaintiff, in his affidavit and in his Rule 56.1 Counter-Statement, also makes a vague argument that
defendants lack standing to assert the continuing effectiveness of the Subordination Agreement.  (*See* Pl.
Response to Defs. Statement of Undisputed Material Facts ¶16; Khan Aff. ¶10).  Plaintiff has not raised
this issue in his memorandum of law and cites no authority in support of his argument that defendants lack
standing.  The Court declines to address this unsupported argument and notes, in any event, that Douglas-
Del. is a signatory to the Subordination Agreement.  (*See* Surette Decl. ¶ 10 ("Douglas-Del [] is also a party
to the Continuing Subordination Agreement and it agreed to be bound by all of the provisions of the
Continuing Subordination Agreement."), Ex. 2 ("The undersigned [Douglas-Del] acknowledges receipt of
an executed counterpart of the above [Subordination] Agreement, confirms each of the representations and
warranties made above and agrees to be bound by all of the above provisions.")

interest" are entitled to the benefits of the agreement, and LaSalle was a "mere assignee." (*See* Pl. Brief at 7-9)  Section 11 provides in pertinent part:

> This Agreement binds Junior Creditor and each of Junior Creditor's heirs, executors, administrators, **successors in interests and assigns**, and benefits [NCB] and each of its **successors in interest.** (emphasis added)

(Surette Decl. Ex. 2 §11)  Plaintiff argues that the fact that this provision states that the Subordination Agreement is to bind Junior Creditor's "successors in interest and assigns" (among others) but only binds [NCB]'s "successors in interest" must mean that the agreement was not intended to benefit, and cannot be enforced by, an "assignee" of NCB. Plaintiff further contends that the phrase "successor in interest" connotes an entity that "acquires substantially all of its predecessor's assets or stock and continues to operate its predecessor's business," purportedly quoting *Lake Erie Construct. Co. v. Indus. Comm'n of Ohio,* 587 N.E.2d. 458 (Ohio 1991), and several other cases under Ohio law that allegedly reached similar conclusions.[6]  (Pl. Brief at 7-8)  Since LaSalle did not acquire all or any of NCB's assets or stock and does not carry on its business, plaintiff concludes that LaSalle is not a successor in interest and has no rights under the agreement.

Defendants dispute plaintiff's interpretation of the phrase "successors in interest," arguing instead that the phrase "has a broad meaning, and essentially covers any subsequent holder of the legal right at issue." (Defs. Reply at 4)  Further, they argue that under Ohio law, rights under a contract are presumed assignable (with a few exceptions) unless assignment is explicitly prohibited by the contract or otherwise by law.

---

[6] The Court is perplexed by the plaintiff's alleged quotation from the *Lake Erie* opinion.  Nowhere in *Lake Erie* does the Ohio Supreme Court define a successor in interest as "a succeeding entity which acquires substantially all of its predecessor's assets or stock and continues to operate its predecessor's business," as plaintiff claims.  Rather, in *Lake Erie* the Ohio Supreme Court stated that the term "successor in interest," as used in Ohio workers' compensation statutes and regulations, "is simply a transferee of a business in whole or in part."  578 N.E.2d at 460.

Defendants contend that the Subordination Agreement contains no such prohibition, and that the use of the phrase "successors in interest," as opposed to "successors in interest and assigns" cannot be interpreted as implicitly creating such a prohibition.  (*Id.* at 4-5) Consequently, defendants contend that the assignments of the Subordination Agreement from NCB to TCT Holdings, and then from TCT Holdings to LaSalle, were valid and that LaSalle (and/or Bank of America, as its acquiror), is entitled to enforce its terms.

The Court concludes that the Subordination Agreement was assignable under its own terms.  At common law, rights under a contract involving no personal confidential relation and no exceptional personal skill or knowledge are generally assignable.  *See* 3 Restatement of the Law 2d, Contracts (1981) § 317(2).  Under Ohio law, which governs the Subordination Agreement, rights under a contract may be assigned except under three conditions: (1) "if there is clear contractual language prohibiting assignment;" (2) if assignment would "materially change the duty of the obligor, materially increase [the obligor's] burden or risk under the contract, materially impair [the obligor's] chance of securing a return on performance, or materially reduce the contract's value;" or (3) if assignment "is forbidden by statute or by public policy."  *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.,* 861 N.E.2d 121, 128 (Ohio 1996) (internal citations omitted). As plaintiff does not argue that the second or third conditions apply here, the only issue is whether the Subordination Agreement contains clear contractual language prohibiting assignment.  The Court finds it does not.

There is no clause in the Subordination Agreement that states explicitly that the agreement cannot be transferred or assigned.  Rather, plaintiff's argument that the benefits of the agreement do not inure to LaSalle rests on plaintiff's construction of §11

of the Subordination Agreement.  The Court is not persuaded by plaintiff's argument that the phrase "successors in interest" in §11 of the Subordination is necessarily limited to entities that "acquire substantially all of [their] predecessor's assets or stock and continue to operate [their] predecessor's business," and, therefore, excludes LaSalle.[7]  More importantly, even if the phrase "successors in interest" did have the narrow meaning urged by plaintiff, that would still not support a conclusion that the Subordination Agreement could not be assigned in light of the strong common law presumption in favor of the free assignment of contract rights.  *See* 3 Restatement of the Law 2d, Contracts (1981) § 317(2); *Pilkington,* 861 N.E.2d at 128.  In effect, plaintiff is arguing that §11 prohibits assignment by implication by failing to explicitly list "assignees" as parties entitled to benefit from the Subordination Agreement.  However, clauses prohibiting the assignment of contract rights must be clear and plain, and should be strictly construed. *Taft v. McDowell Wellman Engineering Co.,* No. 39025, 1979 WL 210262 at *5 (Ohio Ct. App. Aug. 9, 1979) (citing 4 Corbin on Contracts, §873, at 494 (1951)).  The omission of the word "assignees" from the list of parties entitled to benefit from the Subordination Agreement does not constitute clear and plain language prohibiting assignment, as is required to render a contract non-assignable.  *See id.; Pilkington,* 861

---

[7] The cases cited by plaintiff in support of this claim involved the interpretation the phrase "successor in interest" in workers' compensation and/or employment statutes.  It is clear from a review of those cases that the court's interpretation of the phrase "successor in interest" was driven by policy considerations regarding the liability of successor employers that are unique to the workers' compensation and employment contexts.  *See, e.g., Lake Erie,* 578 N.E.2d at 460 (interpreting phrase "successor in interest" in Ohio workers' compensation statute for purposes of determining whether successor employer was required to assume predecessor's experience rating when determining its premium rates under the state insurance fund); *State ex rel. Crosset Co., Inc. v. Conrad,* 721 N.E.2d. 986 (Ohio 2000) (interpreting the phrase "successor in interest" under the rules for administering the state workers' compensation insurance fund); *Coffman v. Chugach Support Servs., Inc.,* 411 F.3d 1231 (11th Cir. 2005) (addressing whether employer was a "successor in interest" to plaintiff's previous employer, and thereby owed a duty to employ the employee upon his return from active military duty, under the Uniformed Services Employment and Reemployment Rights Act).  Such interpretations have no applicability to the situation at hand, in which the phrase "successor in interest" was used in a provision setting forth the parties who are to be bound by, and to benefit from, the Subordination Agreement.

N.E.2d at 128; *see also Special Products Mfg., Inc. v. Douglass,* 553 N.Y.S.2d 506, 509 (N.Y. App. Div. 1990) (where employment contract contained language providing that its benefits inured to "successors and assigns" and subsequent contract signed by the same parties the following year contained no such language, court nonetheless found that subsequent contract was assignable because there was no language specifically prohibiting assignment); *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell,* 863 F.Supp. 135, 137-38 (S.D.N.Y. 1994) (provision of certificate of health insurance that benefits for care in foreign countries would be paid only to the insured was not sufficiently clear and explicit to preclude assignment of rights from insured to hospital providing services); *cf. Mettler Toledo Inc.  v. Republic Powdered Metals Inc.,* C.A. No. 2500-M, 1996 WL 285368, at *3 (Ohio Ct. App. May 29, 1996) (clear contractual language prohibited assignment where the contract explicitly stated that "[t]his warranty is not transferable"); *J.G. Wentworth L.L.C. v. Christian,* No. 07 MA 113, 2008 WL 2486552, at *8 (Ohio Ct. App. June 18, 2008) (clear contractual language prohibited assignment where contract provided that "[n]o amount payable under this Agreement shall be subject to anticipation, assignment, sale, transfer, pledge. . .").[8]  Thus, the Court concludes that under its own terms, the Subordination Agreement was assignable.[9]

---

[8] The parties do not contend that New York law differs in any material way from Ohio law with respect to the assignability of contract rights.

[9] Having reached this conclusion, the Court need not address plaintiff's argument that the doctrine of *contra proferentum* should apply and that the contract should be strictly construed against the drafter because this doctrine comes into effect only when a contract is found to be ambiguous.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d. 76, 88 n.7 (2d Cir. 2002); *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889**,** 895 n.6 (6th Cir. 1996).  That is not the case here with respect to the assignability of the Subordination Agreement.

**b. Did Assignment of the Subordination Agreement Violate the Terms of the Debenture?**

Plaintiff also argues that the assignment of the Subordination Agreement violated two different provisions of the Debenture: §9(a) (which relates to assignment), and §4(d) (the "no impairment" provision).  Both of these arguments are unavailing.

With respect to §9(a) of the Debenture, plaintiff argues that this provision prohibited assignment without plaintiff's consent, and that plaintiff's "express refusal to execute a new and superseding subordination agreement in favor of LaSalle can only be construed to constitute express refusal to consent to any such assignment." (Pl. Brief at 10)  Plaintiff, in essence, is arguing that the assignment *of the Subordination Agreement* violated the §9(a) *of the Debenture.*  While plaintiff is correct that §9(a) of the Debenture restricts the assignment of "all of any part *of this Debenture*" in certain circumstances unless "prior written consent of the other party [to the Debenture]" has been obtained (emphasis added), plaintiff's argument fails because the undisputed facts in the record make clear that *the Debenture* was never assigned.  The Debenture at issue in this lawsuit was between Khan and Douglas-Del.  Separately, Douglas-Del entered into a loan agreement with NCB.  Separately from that, but as a condition to NCB entering into the loan agreement with Douglas-Del, Khan and Douglas-Del executed the Subordination Agreement in which Khan subordinated his debt to the NCB loan.  There are, therefore, three different contracts that are involved in the present dispute.  The undisputed facts in the record establish NCB purported to assign its interest in the latter two contracts (the loan to Douglas-Del and the Subordination Agreement), but that the Debenture between

Khan and Douglas-Del was never assigned.[10]  Accordingly, there has been no violation of §9(a) of the Debenture.

Plaintiff also argues that assignment of the Subordination Agreement violated NCB's obligations to plaintiff under §4(d) of the Debenture.  This section provides:

> No Impairment.  The Company will not, by amendment of its Certificate of Incorporation, any certificate of designations or bylaws, or through any reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company, but will at all times in good faith assist in the carrying out of all the provisions of this Section 4 and in the taking of all such action as may be necessary or appropriate in order to protect the rights of Holder against impairment, including having enough shares authorized to permit conversion in accordance with Section 4."

(Surette Decl. Ex. 1 §4(d))  Plaintiff's argument appears to be that by engineering the series of transactions whereby the Subordination Agreement was assigned by NCB to TCT Holdings and then to LaSalle, defendants breached their obligation not to do anything to "avoid or seek to avoid the observance or performance of [Douglas-Del's obligations under the Debenture]."  (*See* Khan Aff. ¶18; Oral Arg. Tr. Apr. 16, 2009, at 12-13).

This argument fails as a matter of law as plaintiff proffers no evidence that defendants were seeking avoid their obligations *under the Debenture* by assigning *the Subordination Agreement*.  Defendants' obligation under the Debenture was, *inter alia*, to pay interest to Khan at the agreed upon rates at the agreed upon times.  Khan's obligation under the Subordination Agreement—an agreement that he entered into voluntarily—was not to take any action to enforce the terms of the Debenture without first seeking the

---

[10] The only transaction that directly affected the Debenture was Douglas-Del's merger into TCT, through which TCT succeeded to Douglas-Del's obligations under the Debenture.  This transaction was not an assignment.

consent of NCB, the senior creditor.  NCB's assignment of the Subordination Agreement

to TCT Holdings, and TCT Holdings' subsequent assignment of that agreement to

LaSalle, in no way altered defendants' obligation under the Debenture to pay interest at

the agreed upon rates at the agreed upon times.  Khan remains obligated under the

Subordination Agreement not to take any action to enforce Defendants' obligations under

the Debenture until the senior debt has been paid, unless he first obtains the consent of

the holder of that debt.  Although Khan is frustrated that he has not been paid any sums

under the Debenture and cannot at present take any action to compel such payment as a

result of §4(d) of the Subordination Agreement, that is the bargain that he made.  In sum,

plaintiff's arguments that the Subordination Agreement is of no force and effect are

unavailing.

**2.        Does §4(c) of the Subordination Agreement Bar the Present Lawsuit?**

Having concluded that the Subordination Agreement was validly assigned and

remains in force, the next issue is whether §4(c) of the agreement applies to the facts at

hand and prevents Khan from bringing an action to enforce the Debenture without

seeking the consent of LaSalle or Bank of America.  Plaintiff contends that the senior

debt has been fully paid, such that §4(c) of the Subordination Agreement does not apply.

More specifically, plaintiff alleges that "the purported assignment of the Senior Debt

from [NCB] to defendants, through their affiliate and alter ego [TCT] Holdings, thus

placed such obligations and the rights of the entity to whom those obligations were owed

in the same entity and thereby extinguished such debt for the purposes of this action."

(Pl. Brief at 11-12)

Plaintiff's general legal contention—that when a creditor acquires the obligations owed to it, that debt is extinguished—is surely correct.  *See, e.g., Cadle Co., II., Inc. v. Bynes*,  Nos. 70346, 70373, 70513, 1997 WL 37724, at *5 (Ohio  Ct. App. 1997).  The question, then, is whether there is a triable issue of material fact as to whether the debt originally owed to NCB remains outstanding or was extinguished at the time that Douglas-Del merged into TCT and TCT Holdings sold the debt to LaSalle.  The Court concludes that defendants, as the moving party on this motion for summary judgment, have satisfied their initial burden of showing that there is outstanding senior debt.  In support of the assertion that the senior debt remains outstanding, defendants have offered a sworn declaration from Andrew J. Heinz, president of Bank of America (successor by merger to LaSalle), based on his personal knowledge, which states that TCT is indebted to LaSalle.  (Heinz. Decl. ¶3 ("At the time of the assignment of the Loan from [TCT Holdings] to [LaSalle], as well as since then, TCT has been indebted to [LaSalle] under various loan agreements. . .")).  Defendants have also introduced a letter sent by LaSalle to Khan on October 10, 2008 stating that, "the Senior Debt has not been paid in full," and demanding that Khan dismiss his complaint for failure to comply with the Subordination Agreement.  (*Id*. Ex. 2)

Plaintiff, on the other hand, has not met his burden of introducing specific facts that would be admissible at trial that are sufficient to raise a triable issue of material fact with respect to whether the senior debt was extinguished, as he claims, because TCT Holdings was an alter ego of TCT.  The vast majority of Khan's "evidence" regarding the alleged extinguishment of the debt is in the form of speculative assertions in his affidavit. For example, he states that, "Upon information and belief, [TCT] Holdings is or was a

Delaware corporation formed by TCT or by its dominant shareholders (CAI/Aero) shortly before the merger of Douglas-Delaware into TCT, for the sole purpose of serving as an interim party to such financial transactions and to disguise the fact that I had been asked – and refused – to provide a new subordination agreement in favor of LaSalle. . ." (Khan Aff. ¶15)  Similarly, Khan alleges that, "Upon information and belief, (i) the source of the funds paid by [TCT] Holdings to [NCB] in connection with such transactions was TCT itself or its dominant owners CAI/Aero," and that, "Upon information and belief, the amounts paid to [NCB] by the defendant TCT (through [TCT] Holdings) fully paid and extinguished such Senior Debt." (*Id.* ¶21)  Such statements, made "upon information and belief," are insufficient to raise a triable issue of fact as to whether the senior debt was extinguished because they are mere speculation not based on plaintiff's personal knowledge.  *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir. 2004) ("[Rule 56's] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'")  Indeed, Khan himself admitted that he lacked personal knowledge of all the statements in his affidavit that were made "upon information and belief." (*See* Khan Aff. ¶1 ("I am personally familiar with all of the facts hereinafter set forth *except as to statements made upon information and belief*, which I believe to be true.") (emphasis added))

Similarly, Khan asserts that, "I was thereafter informed and believe that TCT and Douglas-Delaware subsequently entered into agreements with [LaSalle] pursuant to which LaSalle advanced funds to TCT which funds were, in or about August 2007, remitted to the Bank to fully pay and satisfy all obligations of Douglas-Delaware to the [NCB]." (Khan. Aff. ¶8)  Testimony about what some unidentified person informed

Khan is hearsay, would not be admissible at trial, and is not properly set forth in an affidavit in opposition to a motion for summary judgment.  *See H. Sand & Co.,* 934 F.2d at 545-55.  Moreover, Khan's assertion that he "believes" that LaSalle advanced funds to TCT which were used to fully pay and satisfy Douglas-Del's obligations, viewed in context of ¶8 and of the affidavit as a whole, does not appear to be based on Khan's personal knowledge and, therefore, does not satisfy the requirements of Rule 56.  *See Patterson,* 375 F.3d at 219.

The only evidence offered by plaintiff regarding the alleged payment of the senior debt that meets the requirements of Rule 56 is a document containing the Minutes of a Telephonic Emergency Meeting of the Stockholders of Douglas-Del, held on July 11, 2007 (the "July 11 Minutes").  (Lauer Aff. Ex.)  This document discusses the current status of Douglas-Del's negotiations with LaSalle, and states that, "LaSalle as a condition to making the loan and paying off NCB would require all stockholders to subordinate all payments from [Douglas-Del] to them. . . Khan indicated that he was unwilling to do so." (*Id.*)  Khan's attorney submits that "said Minutes. . . establish. . . that the financing provided to defendants by LaSalle was expressly intended (and thereafter was used) to pay all obligations of the defendants to [NCB].  Accordingly, there is no 'Senior Debt' to which Khan's claims upon the Debenture may be deemed subordinate." (Lauer Aff. ¶4)

The Court concludes that while the July 11 Minutes could certainly support an inference that in July of 2007, defendants contemplated a transaction in which LaSalle would provide financing that would pay off defendants' obligations to NCB, even when the evidence is viewed in the light most favorable to the plaintiff, no reasonable jury could conclude, based solely on the July 11 Minutes, that LaSalle nonetheless paid off

defendants' obligations to NCB in August 2007.  Certainly the form of the transactions, which is not in dispute, does not establish that LaSalle paid off Douglas-Del's debt. Indeed, the transactions on their face show that LaSalle acquired that debt for value from TCT Holdings.  Moreover, although plaintiff alleges in conclusory fashion that TCT Holdings was an "alter ego" of TCT, plaintiff has proffered no specific facts to support this statement and thus has failed to raise a triable issue of fact with respect to whether TCT Holdings was an alter ego of TCT.[11]  *See Anderson,* 477 U.S. at 256-57 (plaintiff must present affirmative and specific evidence showing there is a genuine issue for trial and cannot rely on conjecture or conclusory statements).

*          *          *

In sum, defendants have met their burden of showing that plaintiff's action should be dismissed.  Plaintiff's action violates the clear and unambiguous terms of §4(c) of the Subordination Agreement, which this Court has held was validly assigned to LaSalle, remains in force, and applies to the facts here.  Defendants' motion for summary judgment should be granted.  Plaintiff's cross-motion for summary judgment is denied for the same reasons.

---

[11] Under Ohio law, corporate entities are presumed to be distinct and veil piercing is only appropriate when "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc*., 617 N.E.2d 1075,1086 (Ohio 1993); *Minno v. Pro-Fab, Inc.,* 905 N.E.2d 613, 617 (Ohio 2009) (*Belvedere* test applies not only to determine when an individual shareholder may be held liable for corporate wrongdoing, but also to ascertain when parent corporation can be held liable for actions of subsidiary); *see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir. 2001) (discussing test for piercing corporate veil of alleged alter ego under New York law and enumerating factors to be considered by courts in evaluating such claims).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [11]

pursuant to Rule 56 is GRANTED, and plaintiff's action is hereby dismissed. Further,

plaintiff's cross-motion [18] for an order directing entry of judgment in favor of plaintiff

pursuant to Rule 56, or, in the alternative, striking the affirmative defenses asserted in

defendants' answer pursuant to Rules 8(c) and 12(f) of the Federal Rules of Civil

Procedure, is DENIED. The Clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
      September 29 2009

Richard J. Holwell
United States District Judge

22